## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| CHILDERS REDIMIX AND CONSTRUCTION SUPPLY INC., | ) ) ) ) | CASE NO. 5:21-cv-2150 |
| PLAINTIFF, | ) ) ) | JUDGE SARA LIOI |
| vs. | ) ) | |
| CONCRETE PLANTS, INC., | ) ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| DEFENDANT. | ) | |

Before the Court is the motion filed by plaintiff Childers Redimix and Construction Supply Inc. ("Childers Redimix" or "plaintiff") seeking summary judgment on defendant's counterclaim. (Doc. No. 37.) Defendant Concrete Plants, Inc. ("CPI" or "defendant") filed a brief in opposition (Doc. No. 38) and Childers Redimix filed a reply (Doc. No. 41).[1] For the reasons discussed herein, the motion is denied.

### I.    PROCEDURAL BACKGROUND

On October 15, 2021, Childers Redimix initiated this lawsuit in the Stark County Court of Common Pleas. The complaint asserts three causes of action: (1) unjust enrichment; (2) breach of contract; and (3) declaratory judgment. (Doc. No. 1-1, Complaint.) Although not expressly stated in the complaint, the first and second causes of action are construed by the Court as pleaded in the

---

[1] Both parties filed depositions in support of their respective briefs. For convenience, the Court's references herein to any deposition testimony are to the transcripts filed by CPI. (*See* Doc. No. 39-1, Deposition of Jesse P. Childers, Jr.; Doc. No. 40-1, Deposition of Charles Denton (Denny) Holmes, III.) Neither party included the exhibits to the depositions, but most of the relevant exhibits are attached to either the pleadings and/or the briefs on the instant motion. For purposes of this ruling, the Court relies on any such exhibits only to the extent they are undisputed by the parties.

alternative since, under Ohio law,[2] "one cannot recover under a theory of unjust enrichment when there is a contract governing the dispute." *Mktg. Assoc., Inc. v. Fellowes, Inc.*, No. 1:05-cv-1518, 2006 WL 721619, at *1 (N.D. Ohio Mar. 21, 2006) (citations omitted).[3]

On November 12, 2021, CPI properly removed the action to this Court on the basis of diversity jurisdiction. (Doc. No. 1, Notice of Removal.) Shortly thereafter, on November 19, 2021, CPI filed its answer to the complaint, along with a counterclaim for declaratory judgment. (Doc. No. 5, Answer and Counterclaim.)

On November 30, 2021, Childers Redimix filed its reply to CPI's counterclaim. (Doc. No. 7, Reply to Counterclaim.)

Childers Redimix timely filed the instant motion for summary judgment on CPI's counterclaim; it did not also move for summary judgment on any of its own claims. CPI did not seek summary judgment on any of the claims in the lawsuit or on its counterclaim.

## II. FACTUAL BACKGROUND[4]

The following are undisputed material facts. In 2017, Childers Redimix's principal and sole shareholder Jesse Childers ("Childers") reached out to Charles Denton (Denny) Holmes, III ("Holmes") at CPI seeking to purchase a portable concrete plant from CPI so as to expand Childers Redimix's business into "supplying cement and supplying building materials." (Doc. No. 39-1, at

---

[2] Since this case is brought under the Court's diversity jurisdiction, the substantive law of the forum state is applied. *Perry v. Allstate Indem. Co.*, 953 F.3d 417, 421 (6th Cir. 2020) (citation omitted).

[3] That said, a determination that there was no contract between the parties (which would eliminate plaintiff's breach of contract claim) would not automatically resolve the other claims.

[4] All page number references herein are to the consecutive page numbers applied to each individual document by the electronic filing system, a citation practice recently adopted by this Court despite a different directive in the Initial Standing Order for this case.

9; 12; 23.)[5] In particular, Childers explained to Holmes that Childers Redimix had an opportunity to be the exclusive supplier of cement with respect to the Pro Football Hall of Fame Village being constructed in Canton, Ohio—a $2 billion project. In fact, Childers claimed to have a letter of intent from the lead developer of that project promising to "buy concrete exclusively from [Childers Redimix] for the duration of the [Village] project." (*Id*. at 22–23; 26.) According to Childers, Holmes understood that Childers Redimix was "a strong candidate for the concrete supplier on the [Village] project." (*Id*. at 29.) Holmes, in fact, believed that Childers Redimix would need "two plants instead of one . . . [in order] to meet [the] contract requirements[.]" (*Id*. at 29–30.[6])

After the initial discussions, several modified proposals were sent to Childers in July and August of 2017. (*See* Doc. No. 1-1 ¶¶ 7, 9; Doc. No. 5 ¶¶ 7, 9.) There is no disagreement that, on August 22, 2017, CPI emailed Childers a final proposal dated July 28, 2017.[7] (Doc. No. 1-1, Ex. 3 at 25; Doc. No. 5-1, Ex. 1.) There were two lines at the bottom of the proposal's final page— one captioned "Accepted" and the other captioned "Approved." No specific person is identified to sign the "Accepted" line, but Holmes is listed as the signatory for the "Approved" line. Immediately above these two signature lines, the proposal states:

---

[5] Childers was familiar with Holmes because, in 2015, Childers and his father had considered buying a concrete plant from CPI (to be located in Akron, Ohio) and dealt with Holmes at that time; that project never materialized. (Doc. No. 39-1, at 20–22.)

[6] Holmes testified that CPI's proposal only encompassed one plant by request of Childers Redimix. (Doc. No. 40-1, at 118–19 ("We only quoted one plant; because at the time, [Childers] stated, 'Let's go with one plant, see how we do. And then we'll add the second plant.'").)

[7] The fact that there were several modified proposals is undisputed, although there is a dispute as to the authenticity and/or accuracy of the exhibits attached to the complaint purportedly exemplifying several of the proposals. From the context of the various documents in the record, along with relevant deposition testimony of Holmes and Childers, the Court can ascertain that Doc. No. 1-1, Ex. 3 at 25 is an undisputed copy of the cover email and Doc. No. 5-1, Ex. 1 is an undisputed copy (signed by Childers) of the July 28, 2017 proposal. These are the documents cited herein.

    **Total Price F.O.B. Canton, Ohio**          **$ 895,000.00**
    **Less Deposit**          **($ 125,000.00)**
    **Total**          **$ 770,000.00**

    Terms: 25% Down Payment
             65% Due upon delivery of equipment
             Balance due after installation

(Doc. No. 5-1, at 7.) It is undisputed that CPI's General Conditions of Sale were attached to this document[8] and included the following relevant paragraphs:

> **Acceptance and Price:** Quotations are held open for (30) thirty days from the date on this proposal unless otherwise specified. All sales, use, excise of [sic] other similar taxes are for the account of the purchaser. All orders are subject to acceptance by the factories we [CPI] represent and subject to credit approval.
>
> **Cancellation:** Wrongful cancellation of this order will result in the forfeiture of any down payment and the possible assessment of damages incurred by Concrete Plants Inc. or the Manufacturers we present.

(Doc. No. 5-2, Ex. 2.)

It is undisputed (and reflected on Doc. No. 5-1, at 7) that Childers signed the "Accepted" line and returned the proposal to CPI. The date is uncertain on this record, but it was some time after August 22, 2017.[9] (*See* Doc. No. 39-1, at 59 ("Probably in August, I think is when I [Childers] signed.").) It is undisputed that Holmes never signed the "Approved" line and/or returned a signed copy to Childers Redimix; he testified that he did not believe it was necessary since it was *his* proposal and his approval could be assumed. (Doc. No. 40-1, at 82–83.) When Holmes was pressed

---

[8] It is also undisputed that these General Conditions of Sale were attached to every version of the proposal sent to Childers Redimix during July and August of 2017.

[9] Based on other record evidence, in particular the text messages referenced below, it appears that Childers Redimix returned the signed copy very shortly after, if not on, August 22, 2017.

at his deposition to explain why there was an "Approved" line if there was never any intention that he would sign it, he had "[n]o explanation." (*Id*. at 87.)

Despite the deposit listed as $125,000 on the final proposal, there is no dispute that Childers Redimix actually paid CPI $185,000 towards the 25% down payment, which was not the full amount. (Doc. No. 39-1, at 74 (Childers confirms payment of $185,000 with intent to purchase the concrete plant); Doc. No. 40-1, at 95–96 (Holmes confirms receipt of $185,000); *see also* Doc. No. 1-1 ¶ 11 ("In September 2017, [p]laintiff wired [d]efendant a total of $185,000 as a down payment or deposit in anticipation that the parties would ultimately enter into a binding purchase agreement for a plant."); Doc. No. 5 ¶ 11 (admitting that $185,000 was wired by plaintiff); Doc. No. 5 Counterclaim ¶ 13 (noting that plaintiff "paid . . . the sum of $185,000 as partial satisfaction of the down payment required under the parties' contract").) It is also undisputed that Childers Redimix never did come up with the full 25% down payment.

In any event, after receiving the signed document from Childers Redimix, CPI and Holmes undertook efforts to complete Childers Redimix's project and to deliver the portable concrete plant by December 2017, despite there being no full down payment made.[10] For example, Holmes sought information from Childers about the property where the plant would be installed and asked to meet at the proposed site to discuss the installation.[11] Text messages dating from August 23, 2017 to early January, 2018 (attached to CPI's opposition brief and reviewed in deposition testimony), reflect the efforts made to obtain the down payment and to stay on track to meet the deadline for

---

[10] Holmes testified at his deposition that CPI would not have required the full deposit in order to proceed. (Doc. No. 40-1, at 82.)

[11] Holmes testified at his deposition that he and Tom Bowling (CPI's leadman) went to the site on September 12 or 13, 2017, and "took several pictures[,]" "walked the site[,]" "looked at entrances, exits, that sort of thing for truck traffic[,]" and "laid down the facility for [Childers]." (Doc. No. 40-1, at 117–18.)

installation of the concrete plant. (*See* Doc. No. 38-1, Ex. A, passim.) Finally, the following series of text messages occurred between Holmes and Childers:

> (January 3, 2018, 8:04 PM, Holmes to Childers): If the plant deal is not happening please let me know so I can start selling it. Thank you[.] Denny
>
> (Same date, Childers to Holmes): Def happening. Def. My funding did get approved and just waiting to finalize some things with city. I promise to be in touch tmrw and get up to. [sic] speed. I have been running 5 different directions. [sic] but will Def get with you tmrw.
>
> (Same date, Holmes to Childers): Iam [sic] fine if it doesn't happen, can't keep playing the games[.]
>
> (Same date, Childers to Holmes): Promise it's happening. No games. Will Def finish getting money to you and we can get a schedule.

(*Id*. at 31–33.) Additional text messages from Holmes to Childers dated January 7, 2018 and February 18, 2018, and inquiring about the status of the matter, went unanswered. (*Id*. at 33.) Then, on May 2, 2018, Childers texted Holmes indicating that he would "most likely be catching you up next week sometime[,]" and that he would "call and bring you up to speed and get our deal finished." (*Id*. at 35.) After May of 2018, Holmes did not hear from Childers again until October of 2020.

On October 2, 2020, Childers emailed Holmes stating that he was "finally moving forward[]" and asking Holmes to call him. (Doc. No. 38-2, Ex. B.) Apparently contact was ultimately made because Childers testified that, in October of 2020, he asked Holmes to provide certain drawings to enable Childers Redimix to obtain permits from the relevant government authorities. CPI supplied the drawings in January of 2021 but, according to Childers, they were not the correct ones. (Doc. No. 39-1, at 32–33, 37–38.)

6

In the fall of 2021, Holmes received a call from Childer's wife, Chrissy, asking for the return of the $185,000 deposit. (Doc. No. 40-1, at 61.) Holmes told her he would "look into it[,]" but admitted he never got back to her. (*Id*. at 133.) On October 4, 2021, Chrissy emailed Holmes on behalf of Childers Redimix indicating that "due to a number of circumstances that the company has no control over, we are no longer able to move forward with purchasing the plant." (Doc. No. 38-3, Ex. C.) Chrissy asked again for the return of the $185,000 down payment. (*Id*.) There is no dispute that CPI has not reimbursed any money. Then, in December of 2021, Childers decided: "I'll wash my hands of these people. I want my money back. I'm going a different route." (Doc. No. 39-1, at 33.)

### III.  LEGAL STANDARD ON MOTION FOR SUMMARY JUDGMENT

When a party files a motion for summary judgment, it must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . ; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943–44 (6th Cir. 1990), *impliedly overruled on other grounds by Salve Regina Coll. v. Russell*, 499 U.S. 225, 111 S. Ct. 1217, 113 L. Ed. 2d 190

(1991). In most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [nonmoving party] is entitled to a verdict[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

Once the moving party has presented evidence sufficient to support a motion for summary judgment, the nonmoving party is not entitled to trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." *Goins v. Clorox Co.*, 926 F.2d 559, 561 (6th Cir. 1991). The party opposing the motion for summary judgment may not rely solely on the pleadings but must present evidence supporting the claims asserted by the party. *Banks v. Wolfe Cnty. Bd. of Educ.*, 330 F.3d 888, 892 (6th Cir. 2003); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial).

Moreover, conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990). In other words, to defeat summary judgment, the party opposing the motion must present affirmative evidence to support his or her position; a mere "scintilla of evidence" is insufficient. *Bell v. Ohio State Univ.*, 351 F.3d 240, 247 (6th Cir. 2003) (quotation marks and citation omitted). Rule 56 further provides that "[t]he court need consider only" the materials cited in the parties' briefs. Fed. R. Civ. P. 56(c)(2); s*ee also Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989) ("The trial court no longer has the duty to search the entire record to establish that it is bereft of a

genuine issue of material fact.") (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)).

## IV. DISCUSSION

Underlying both the declaratory judgment counterclaim on which Childers Redimix moves for summary judgment, as well as the claims in the complaint for breach of contract and declaratory judgment, is the single question of whether the parties entered into a binding contract.

"'Typically, a price quotation is considered an invitation for an offer, rather than an offer to form a binding contract.'" *Dyno Constr. Co. v. McWane, Inc.*, 198 F.3d 567, 572 (6th Cir. 1999) (quoting *White Consol. Indus., Inc. v. McGill Mfg. Co.*, 165 F.3d 1185, 1190 (8th Cir. 1999) (further citations omitted)). "Instead, a buyer's purchase agreement submitted in response to a price quotation is usually deemed the offer." *Id*. (citation omitted).

"However, a price quotation may suffice for an offer if it is sufficiently detailed and it 'reasonably appear[s] from the price quotation that assent to that quotation is all that is needed to ripen the offer into a contract.'" *Id*. (quoting *Quaker State Mushroom Co. v. Dominick's Finer Foods, Inc.*, 635 F. Supp. 1281, 1284 (N.D. Ill. 1986) (further citation omitted)). "[T]o constitute an offer, a price quotation must 'be made under circumstances evidencing the express or implied intent of the offeror that its acceptance shall constitute a binding contract.'" *Id*. (quoting *Maurice Elec. Supply Co. v. Anderson Safeway Guard Rail Corp*., 632 F. Supp. 1082, 1089 (D.D.C. 1986) (mem op.))

Under Ohio law, "[a] contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." Ohio Rev. Code § 1302.07(A). *See Am. Bronze Corp. v. Streamway Prods.*, 456 N.E.2d

9

1295, 1300 (Ohio Ct. App. 1982) ("Under R.C. 1302.07(A), conduct sufficient to show agreement, including performance, is a reasonable mode of acceptance and therefore the agreements became binding at the moment production began."). Further, "[u]nless otherwise unambiguously indicated by the language or circumstances[,] an offer to make a contract shall be construed as inviting acceptance in any manner and by any medium reasonable in the circumstances[.]" Ohio Rev. Code § 1302.09(A)(1).

In opposition to the motion for summary judgment, CPI argues that the parties' conduct sufficiently demonstrates that both sides believed they had a binding agreement, intended to be bound, and were in the process of complete performance of the contract, preferably by December of 2017. In particular, CPI points to the following undisputed facts:

- CPI's quotation had all the necessary elements indicating that it was an offer rather than an invitation to negotiate—a description of the product, price, quantity, and terms of payment;

- Childers signed and returned the quotation in August of 2017, indicating that it was "Accepted" by Childers Redimix;

- By September of 2017, Childers Redimix paid $185,000 toward its 25% down payment and continued to promise payment of the balance;

- On September 12 or 13, 2017, CPI visited the actual site to discuss installation and to take photographs;

- Various text messages between Holmes and Childers indicate performance (or attempted performance):

    o  (September 18, 2017): asking Childers to "let [Holmes] know what to do, were [sic] slammed and iam [sic] trying to fit you in[.]" (Doc. No. 38-1 at 16);

    o  (September 22, 2017): indicating that "we need to get moving on this." (*Id.* at 18);

10

- o (October 23, 2017): noting that "[y]ou should have the drawing [requested by Childers for obtaining permits]" and asking Childers to call. (*Id*. at 20);

- o (October 24, 2017): asking whether Childers had looked at the drawing and inquiring as to a "good time to talk[.]" (*Id*. at 21);

- o (October 30, 2017): asking Childers whether he would "like to get a game plan together to get one plant up and running in November" and asking for "dollars, a lot out of pocket right now." (*Id*. at 22);

- o Several additional text messages between October 31, 2017 and December 12, 2017 trying arrange times to talk; (*Id*. at 23–29);

- o (December 13, 2017): "Need to get something done buddy, running out of time. I think I've been pretty patient?? Time [t]o get this done or move on[.]" (*Id*. at 29);

- o (January 4, 2018): "If the plant deal is not happening please let me know so I can start selling it." (*Id*. at 31–32), followed by assurances from Childers that the deal was "[definitely] happening." (*Id*. at 32).

CPI argues that, to find that there was no enforceable agreement between these parties, this Court would have to ignore all of these undisputed facts. The Court agrees, as there are more than sufficient facts that would support a finding that CPI's proposal was sufficiently detailed to ripen into a contract upon Childers Redimix's assent, that Childers Redimix did agree to the terms, and that the parties' conduct thereafter further supports a finding that a contract was formed.

Childers Redimix is not entitled to summary judgment on CPI's claim for declaratory judgment. Therefore, Doc. No. 37 is denied.

## V. CONCLUSION

For the reasons set forth herein, plaintiff's motion for summary judgment (Doc. No. 37) is denied.

**IT IS SO ORDERED**.

Dated: March 14, 2023

                                          **HONORABLE SARA LIOI**
                                          **UNITED STATES DISTRICT JUDGE**